Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPUR RAHMAN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DISCOVERY, INC., DAVID M. ZASLAV, ROBERT R. BECK, ROBERT R. BENNETT, PAUL A. GOULD, ROBERT L. JOHNSON, KENNETH W. LOWE, JOHN C. MALONE, ROBERT J. MIRON, STEVEN A. MIRON, DANIEL E. SANCHEZ, SUSAN M. SWAIN, J. DAVID WARGO, AT&T INC, and DRAKE SUBSIDIARY, INC.,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Opur Rahman ("Plaintiff"), by and through his attorneys, files this action against the

defendants, and alleges upon information and belief, except for those allegations that pertain to him,

which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against Discovery, Inc. ("Discovery" or the

"Company") the Company's Board of Directors (the "Board" or the "Individual Defendants,") AT&T

Inc. ("Parent"), through Drake Subsidiary, Inc. ("Merger Sub", and together with Parent, "AT&T," and

with Discovery and Individual Defendants, the "Defendants"), for violations of Sections 14(a) and

- 1 -

COMPLAINT

20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of the Individual Defendants' efforts to sell the Company to AT&T ") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed stock issuance relating to the merger (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a May 20, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, AT&T will be entitled to receive a newly issued shares in Discovery, where, when completed, as a shareholder as the Company, the Plaintiff's interests will be significantly diluted.  In fact, under the terms of the Merger Agreement, Discovery shareholders will own only approximately 29% of the surviving entity created by the Proposed Transaction.

3.      Thereafter, on November 18, 2021, Discovery filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the dubious nature of the stock issuance at the heart of the Proposed Transaction is laid bare considering the extreme dilutive effect that the Proposed Transaction will have on Plaintiff's Company stock.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on November 18, 2021 with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the

COMPLAINT

financial projections for Discovery and AT&T, provided by Discovery and AT&T to the Board's financial advisors Allen & Company LLC ("Allen") and J.P. Morgan Securities LLC ("J.P. Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Allen and/or J.P. Morgan, if any, and provide to the Company and the Board.

6.        Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction

7.        Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the violations of the Exchange Act by the Defendants.

## **PARTIES**

8.        Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Discovery stockholder.

9.        Defendant Discovery, a media company, provides content across various distribution platforms in approximately 50 languages worldwide.  Discovery is incorporated in Delaware and has its principal place of business at 230 Park Avenue South, New York, NY 10003.  Shares of Discovery common stock are traded on the Nasdaq Stock Exchange under the symbol "DISCA."

10.        Defendant David M. Zaslav ("Zaslav") has been a Director of the Company at all relevant times.  In addition, Zaslav serves as the Company's Chief Executive Officer ("CEO") and President.

11.        Defendant Robert R. Beck ("Beck") has been a director of the Company at all relevant times.

COMPLAINT

12.     Defendant Robert R. Bennett ("Bennett") has been a director of the Company at all relevant times.

13.     Defendant Paul A. Gould ("Gould") has been a director of the Company at all relevant times.

14.     Defendant Robert L. Johnson ("Johnson") has been a director of the Company at all relevant times.

15.     Defendant Kenneth W. Lowe ("Lowe") has been a director of the Company at all relevant times.

16.     Defendant John C. Malone ("Malone") has been a director of the Company at all relevant times.

17.     Defendant Robert J. Miron ("R. Miron") has been a director of the Company at all relevant times.

18.     Defendant Steven A. Miron ("S. Miron") has been a director of the Company at all relevant times.

19.     Defendant Daniel E. Sanchez ("Sanchez") has been a director of the Company at all relevant times.

20.     Defendant Susan M. Swain ("Swain") has been a director of the Company at all relevant times.

21.     Defendant J. David Wargo ("Wargo") has been a director of the Company at all relevant times.

22.     The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

COMPLAINT

23.     Defendant AT&T is the world's largest telecommunications company, and the second largest provider of mobile telephone services. AT&T is incorporated in Delaware and shares of AT&T common stock are traded on the NYSE under the symbol "T."

24.     Defendant Merger Sub is a wholly owned subsidiary of the Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's principal place of business is located in this District and the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

COMPLAINT

## SUBSTANTIVE ALLEGATIONS

*Company Background*

28.     Discovery, a media company, provides content across various distribution platforms in approximately 50 languages worldwide. The Company was founded in 1985 and is headquartered in Silver Spring, Maryland.

29.     Discovery operates in two segments, U.S. Networks and International Networks. The company owns and operates various television networks under the Discovery Channel, HGTV, Food Network, TLC, Animal Planet, Investigation Discovery, Travel Channel, Science, MotorTrend, Discovery en Espanol, Discovery Familia, Eurosport, TVN, Discovery Kids, Discovery Family, American Heroes Channel, Destination America, Discovery Life, DIY Network, Cooking Channel, Great American Country, ID, the Oprah Winfrey Network, Eurosport, DMAX, and Discovery Home & Health brands, as well as other regional television networks. Its content spans genres, including survival, natural history, exploration, sports, general entertainment, home, food, travel, heroes, adventure, crime and investigation, health, and kids. The Company also operates production studios that develop and produce content; and digital products and Websites. It provides content through various distribution platforms comprising pay-television, free-to-air and broadcast television, authenticated GO applications, digital distribution arrangements, content licensing agreements, and direct-to-consumer subscriptions, as well as various platforms that include brand-aligned Websites, online streaming, mobile devices, video on demand, and broadband channels.

30.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results. For example, in the April 28, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted first quarter revenues of $2.792 billion, $140 million in net income, and earnings per share of $0.21.

31.     Defendant CEO Zaslav commented on the results in the Press Release, "'The global rollout of discovery+ is off to a fantastic start by any measure. Key metrics, including subscriber additions, customer engagement, and retention, are exceeding our expectations and demonstrating sustained momentum into the second quarter. We now have 15 million total paying direct-to-consumer subscribers across our global portfolio driven primarily by discovery+, having crossed 13 million total paying direct-to-consumer subscribers at the end of March. Our strong direct-to-consumer performance underscores the outstanding value and appeal of our content, brands and personalities to both consumers and distribution partners alike. We continue to expand the reach of discovery+ with recent launches on Comcast Xfinity and Amazon Prime Video Channels. At the same time, we continue to extend our overall engagement with viewers across screens, anchored by another quarter as the most-watched pay-TV portfolio in the U.S. and our seventh consecutive quarter of international share growth.'"

32.     Despite this positive outlook and promise, the Individual Defendants have caused Discovery to enter into the Proposed Transaction.

*The Flawed Sales Process*

33.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary irrespective of the price obtained.

34.     Primarily, the Registration Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.

35.     In addition the Registration Statement fails to give adequate information as to why the

Company was required to engage with more than one financial advisor. Notably, the Registration Statement reveals that in exchange for their services relating to the Proposed Transaction Allen and J.P. Morgan are entitled to compensation fee in the amount of $75 million and $15 million respectively.

36.     Moreover, the Registration Statement impermissibly groups the financial analyses of both Allen and J.P. Morgan into one section without delineating as to the contributions of each.

37.     Additionally the Registration Statement fails to indicate if the Board or anyone on its behalf conducted a market check for potentially interested third parties during the sales process.

38.     In addition, the Registration Statement is also unclear as to the nature of any non-disclosure agreement entered into between Discovery and any potentially interested third party, including AT&T, as part of the sales process, and if the terms of any such agreements differed from one another, and in what way.

39.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

40.     On May 17, 2021, Discovery and AT&T issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Dallas, TX and New York, NY – May 17, 2021**. AT&T Inc. (NYSE:T) and Discovery, Inc. (NASDAQ: DISCA, DISCB, DISCK) today announced a definitive agreement to combine WarnerMedia's premium entertainment, sports and news assets with Discovery's leading nonfiction and international entertainment and sports businesses to create a premier, standalone global entertainment company.
>
> Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, AT&T would receive $43 billion (subject to adjustment) in a combination of cash, debt securities, and WarnerMedia's retention of certain debt, and AT&T's shareholders would receive stock representing 71% of the new company; Discovery shareholders would own 29% of the new company. The Boards of Directors of both AT&T and Discovery have approved the transaction.

COMPLAINT

The companies expect the transaction will create substantial value for AT&T and Discovery shareholders by:

- Bringing together the strongest leadership teams, content creators, and high-quality series and film libraries in the media business.
- Accelerating both companies' plans for leading direct-to-consumer (DTC) streaming services for global consumers.
- Uniting complementary and diverse content strengths with broad appeal — WarnerMedia's robust studios and portfolio of iconic scripted entertainment, animation, news and sports with Discovery's global leadership in unscripted and international entertainment and sports.
- Forming a new company that will have significant scale and investment resources with projected 2023 Revenue of approximately $52 billion, adjusted EBITDA of approximately $14 billion, and an industry leading Free Cash Flow conversion rate of approximately 60%.
- Creating at least $3 billion in expected cost synergies annually for the new company to increase its investment in content and digital innovation, and to scale its global DTC business.

For AT&T and its shareholders, this transaction provides an opportunity to unlock value in its media assets and to better position the media business to take advantage of the attractive DTC trends in the industry. Additionally, the transaction allows the company to better capitalize on the longer-term demand for connectivity:

- AT&T shareholders participate in a leading media company with a broad global portfolio of brands, tremendous DTC potential and strengthened combined assets.
- Creates substantial value opportunity for AT&T shareholders through stepped-up investment in growth areas – mobile and fixed broadband.
- Capital structure improvement after closing will position AT&T as one of the best capitalized 5G and fiber broadband companies in the United States.
- Results in two independent companies – one broadband connectivity and the other media – to sharpen the investment focus and attract the best investor base for each company.

**A Stronger Competitor in Global Streaming**

The new company will compete globally in the fast-growing direct-to-consumer business — bringing compelling content to DTC subscribers across its portfolio, including HBO Max and the recently launched discovery+. The transaction will combine WarnerMedia's storied content library of popular and valuable IP with Discovery's global footprint, trove of local-language content and deep regional expertise across more than 200 countries and territories. The new company will be able to invest in more original content for its streaming services, enhance the programming options across its global linear pay TV and broadcast channels, and offer more innovative video experiences and consumer choices.

**Uniting Dynamic, Enduring and Historic Brands and Franchises**

The "pure play" content company will own one of the deepest libraries in the world with nearly 200,000 hours of iconic programming and will bring together over 100 of the most cherished, popular and trusted brands in the world under one global portfolio, including: HBO, Warner Bros., Discovery, DC Comics, CNN, Cartoon Network, HGTV, Food Network, the Turner Networks, TNT, TBS, Eurosport, Magnolia, TLC, Animal Planet, ID and many more.

The new company will be able to increase investment and capabilities in original content and programming; create more opportunity for under-represented storytellers and independent creators; serve customers with innovative video experiences and points of engagement; and propel more investment in high-quality, family-friendly nonfiction content.

**Leadership, Governance and Structure**

The companies announced that Discovery President and CEO David Zaslav will lead the proposed new company with a best-in-class management team and top operational and creative leadership from both companies.

Discovery's current multiple classes of shares will be consolidated to a single class with one vote per share.

The new company's Board of Directors will consist of 13 members, 7 initially appointed by AT&T, including the chairperson of the board; Discovery will initially appoint 6 members, including CEO David Zaslav.

**Executive Commentary**

**John Stankey Said:**

"This agreement unites two entertainment leaders with complementary content strengths and positions the new company to be one of the leading global direct-to-consumer streaming platforms. It will support the fantastic growth and international launch of HBO Max with Discovery's global footprint and create efficiencies which can be re-invested in producing more great content to give consumers what they want. For AT&T shareholders, this is an opportunity to unlock value and be one of the best capitalized broadband companies, focused on investing in 5G and fiber to meet substantial, long-term demand for connectivity. AT&T shareholders will retain their stake in our leading communications company that comes with an attractive dividend. Plus, they will get a stake in the new company, a global media leader that can build one of the top streaming platforms in the world."

**David Zaslav Said:**

"During my many conversations with John, we always come back to the same simple and powerful strategic principle: these assets are better and more valuable together. It is super exciting to combine such historic brands, world class journalism and iconic

- 10 -

franchises under one roof and unlock so much value and opportunity. With a library of cherished IP, dynamite management teams and global expertise in every market in the world, we believe everyone wins...consumers with more diverse choices, talent and storytellers with more resources and compelling pathways to larger audiences, and shareholders with a globally scaled growth company committed to a strong balance sheet that is better positioned to compete with the world's largest streamers. We will build a new chapter together with the creative and talented WarnerMedia team and these incredible assets built on a nearly 100-year legacy of the most wonderful storytelling in the world. That will be our singular mission: to focus on telling the most amazing stories and have a ton of fun doing it."

**Transaction Highlights**

The combination will be executed through a Reverse Morris Trust, under which WarnerMedia will be spun or split off to AT&T's shareholders via dividend or through an exchange offer or a combination of both and simultaneously combined with Discovery. The transaction is expected to be tax-free to AT&T and AT&T's shareholders.

In connection with the spin-off or split-off of WarnerMedia, AT&T will receive $43 billion (subject to adjustment) in a combination of cash, debt securities and WarnerMedia's retention of certain debt. The new company expects to maintain investment grade rating and utilize the significant cash flow of the combined company to rapidly de-lever to approximately 3.0x within 24 months, and to target a new, longer term gross leverage target of 2.5x-3.0x. WarnerMedia has secured fully committed financing from JPMorgan Chase Bank, N.A. and affiliates of Goldman Sachs & Co. LLC for the purposes of funding the distribution.

The transaction is anticipated to close in mid-2022, subject to approval by Discovery shareholders and customary closing conditions, including receipt of regulatory approvals. No vote is required by AT&T shareholders. Agreements are in place with Dr. John Malone and Advance to vote in favor of the transaction.

***The Materially Misleading and/or Incomplete Registration Statement***

41.    On November 18, 2021, the Discovery Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

COMPLAINT

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

b.   Adequate information as to why multiple financial advisors were engaged by the Company;

c.   Adequate information as to specifically, which financial advisors created the financial analyses presented in the Registration Statement or if both financial advisors created on joint fairness opinion, the specific contributions of each;

d.   Adequate information as to why no market check was conducted for any potentially interested third party during the sales process by the Board or anyone on its behalf;

e.   Whether the confidentiality agreements entered into by the Company with AT&T differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including AT&T, would fall away; and

g.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying

- 12 -

COMPLAINT

transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Discovery and AT&T's Financial Projections*

43.     The Registration Statement fails to provide material information concerning financial projections for Discovery and AT&T provided to and relied upon by Allen and J.P. Morgan in their analyses. The Registration Statement discloses financial projections for the Company which are materially misleading

44.     The Registration Statement should have, but fails to provide, certain information in the projections for Discovery and AT&T that were provided to the Board, Allen and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45.     With regard to the Discovery Projections, the Registration Statement fails to disclose material line items for the following metrics:

a.   Revenue, including all underlying necessary inputs and assumptions;

b.   Adjusted EBTIDA pre-SBC, including all underlying necessary inputs, including specifically: operating income, employee share-based compensation, depreciation and amortization, restructuring and other charges, certain impairment charges, gains and losses on business and asset dispositions, certain inter-segment eliminations related to production studios, third-party transaction and integration costs, and the specific "other items impacting comparability" utilized;

COMPLAINT

c. Adjusted EBTIDA post-SBC, including all underlying necessary inputs and assumption, including specifically: operating income, employee share-based compensation, depreciation and amortization, restructuring and other charges, certain impairment charges, gains and losses on business and asset dispositions, certain inter-segment eliminations related to production studios, third-party transaction and integration costs, the specific "other items impacting comparability" utilized, and share-based compensation; and

d. Unlevered Free Cash Flows, including all underlying necessary inputs and assumptions, including specifically: net operating profit after tax adjusted by including depreciation and amortization and excluding change in content, capital expenditure and change in working capital.

46.    With regard to the Adjusted WarnerMedia Projections created by AT&T and adjusted by Discovery, the Registration Statement fails to disclose material line items for the following metrics:

a. Revenue, including all underlying necessary inputs and assumptions;

b. Adjusted EBTIDA, including all underlying necessary inputs and assumption, including specifically: operating income, employee share-based compensation, depreciation and amortization, and certain inter-segment eliminations; and

c. Total Pre-Tax Cash Flows, including all underlying necessary inputs and assumption, including specifically: Film and TV amortization, employee share-based compensation, working capital changes, cash content spend, and capital expenditures.

47.    With regard to the WarnerMedia Projections created by AT&T, the Registration Statement fails to disclose material line items for the following metrics:

a. Revenue, including all underlying necessary inputs and assumptions;

b. Adjusted EBTIDA, including all underlying necessary inputs and assumption, including specifically: operating income, employee share-based compensation,

depreciation and amortization, and the specific certain inter-segment eliminations utilized; and

c. Unlevered Free Cash Flows, including all underlying necessary inputs and assumption, including specifically: Film and TV amortization, employee share-based compensation, working capital changes, cash content spend, capital expenditures and tax expense

48. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Allen and/or J.P. Morgan's financial analyses or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Allen and J.P. Morgan*

51. In the Registration Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

52. As an initial matter, the Registration Statement impermissibly groups the financial analyses of both Allen and J.P. Morgan into one section without delineating as to the contributions of each.

COMPLAINT

53.     With respect to the *Selected Public Companies Analyses - Discovery*, the Registration Statement fails to disclose the following:

    a.  The metrics for each of the selected companies;

    b.  The specific inputs and assumptions used to determine the utilized selected range of calendar year 2022 estimated EBITDA multiples of 6.5x to 7.5x, as applied to Discovery's traditional business;

    c.  The specific inputs and assumptions used to determine the utilized selected range of calendar year 2024 revenue multiples of 4.0x to 5.0x, as applied to Discovery's DTC business; and

    d.  The specific inputs and assumptions used to determine the utilized selected 2022 estimated EBITDA multiple of 6.0x, as applied to Discovery's corporate segment.

54.     With respect to the *Selected Public Companies Analyses - WarnerMedia*, the Registration Statement fails to disclose the following:

    a.  The metrics for each of the selected companies;

    b.  The specific inputs and assumptions used to determine the utilized selected range of calendar year 2022 estimated EBITDA multiples of 8.0x to 10.0x, as applied to WarnerMedia's traditional business;

    c.  The specific inputs and assumptions used to determine the utilized selected range of calendar year 2024 revenue multiples of 4.0x to 5.0x,, as applied to Discovery's WarnerMedia's DTC business; and

    d.  The specific inputs and assumptions used to determine the utilized selected 2022 estimated EBITDA multiple of 6.0x, as applied to WarnerMedia's corporate segment.

55.     With respect to the *Discounted Cash Flow Analyses - Discovery*, the Registration Statement fails to disclose the following:

    a.  With regard to the Allen DCF:

        i.  The terminal values calculated for Discovery;

- 16 -

COMPLAINT

      ii.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.00% to 1.50%;

      iii.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.00% to 7.25%;

  b.  With regard to the J.P. Morgan DCF:

      i.  The terminal values calculated for Discovery;

      ii.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.00% to 1.50%;

      iii.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.00% to 7.00%.

56.    With respect to the *Discounted Cash Flow Analyses - WarnerMedia*, the Registration Statement fails to disclose the following:

  a.  With regard to the Allen DCF:

      i.  The terminal values calculated for WarnerMedia;

      ii.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.25% to 1.75%;

      iii.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.00% to 7.00%;

  b.  With regard to the J.P. Morgan DCF:

      i.  The terminal values calculated for WarnerMedia;

      ii.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.25% to 1.75%;

      iii.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.00% to 7.00%

57.    With respect to the *Intrinsic Value Creation Analysis – J.P. Morgan*, the Registration Statement fails to disclose the following:

a.  The utilized approximate aggregate estimated present value of the potential Synergies and transaction expenses based on estimates provided by Discovery management.

58.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Discovery stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

COMPLAINT

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.   The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.   The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.   The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

67.   The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

COMPLAINT

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Discovery's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations

COMPLAINT

specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Discovery within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Discovery to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Discovery and all of its employees. As alleged above, Discovery is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 23, 2021

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

COMPLAINT